

**IT IS ORDERED as set forth below:**

**Date: November 20, 2025**

_____
**James R. Sacca**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Subchapter V |
| COLLABORATION SOFTWARE | ) | |
| PARTNERS, LLC,[1] | ) | Case No. 25-21412 (JRS) |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER AUTHORIZING AND APPROVING (I) PURCHASE AGREEMENT AMONG DEBTOR AND COLLABORATION SOFTWARE PARTNERS ACQUISITION, LLC, (II) THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS, (III) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

Upon the _Motion for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Designating Stalking Horse Bidder, (V) Establishing_

---

[1] The last four digits of Collaboration Software Partners, LLC's federal tax identification number are (6238).

1

*Notice and Procedures for the Assumption and Assignment of Contracts, (VI) Authorizing the Assumption and Assignment of Assumed Contracts, and (VII) Authorizing the Sale of Assets* (the "Motion") of the above-captioned debtor and debtor in possession (the "Debtor"), for entry of an order authorizing or approving, among other things, (i) the sale of the Assets free and clear of all claims, liens, liabilities, rights, interests, and encumbrances (except certain permitted encumbrances and/or assumed liabilities as determined by the Debtor and Collaboration Software Partners Acquisition, LLC), (ii) the Debtor to assume and assign certain executory contracts and unexpired leases, and (iii) related relief; and the Court having entered a prior order, dated October, 22 2025 [Docket No. 66] (the "Bid Procedures Order"), approving bidding procedures for the Debtor's Assets (the "Bid Procedures")[2] and approving procedures for the assumption and assignment of the Debtor's executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), and granting certain related relief; and the Debtor having identified the bid by Buyer (as defined herein) as the highest and otherwise best bid for the Purchased Assets; and the Auction having been cancelled in accordance with the Bid Procedures; and the Debtor having filed a *Notice of Cancellation of Auction and Designation of Stalking Horse Bid as Successful Bid* [Docket No. 110], identifying Collaboration Software Partners Acquisition, LLC or its designee (the "Buyer") as the Successful Bidder for the Purchased Assets; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Court having found that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final order consistent with Article

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Purchase Agreement (as defined below), or if not defined therein, the Bid Procedures, or if not defined therein, the Motion.

III of the United States Constitution; and the Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and a hearing on the Motion (the "Sale Hearing") having been held to consider the relief requested in the Motion and to review and consider (i) the Motion and the exhibits thereto, and (ii) the Asset Purchase Agreement, dated as of October 15, 2025, by and among the Debtor and Buyer, a copy of which is attached hereto as Exhibit A (together with any schedules and exhibits thereto, the "Purchase Agreement") whereby the Debtor has agreed, among other things, to sell the Purchased Assets (as defined in the Purchase Agreement) to Buyer on the terms and conditions set forth in the Purchase Agreement (collectively, the "Sale"); and the Debtor having determined that the Qualified Bid submitted by Buyer as embodied in the Purchase Agreement is the highest and otherwise best bid for the Purchased Assets and having selected such bid as the Successful Bid pursuant to the Bid Procedures; and upon the record of the Sale Hearing, all of the proceedings had before the Court, and all other pleadings in this Chapter 11 Case, including this Motion; and the Court having found and determined that the relief sought in the Motion as it pertains to the relief granted hereby is in the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED ON THE PLEADINGS, THE REPRESENTATIONS OF THE PARTIES, AND THE RECORD ESTABLISHED AND EVIDENCE PRESENTED AT THE HEARING

A. <u>Fed. R. Bankr. P. 7052</u>. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. <u>Jurisdiction and Venue</u>. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Court may enter a final order with respect to the Motion, the Purchase Agreement, the transactions contemplated thereby, and all related relief, in each case, consistent with Article III of the United States Constitution.

C. <u>Final Order</u>. This Order constitutes a final and appealable order as set forth in 28 U.S.C. § 158(a), except as otherwise set forth herein.

D. <u>Statutory and Legal Predicates</u>. The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, 9008, and 9014.

E. <u>Opportunity to Object</u>. A fair and reasonable opportunity to object or be heard regarding the relief granted by this Order, including, but not limited to, the assumption and assignment of the Assigned Contracts and the Cure Costs (each as defined below), has been afforded to all interested Persons and Entities (as defined below).

F. <u>Sound Business Purpose</u>. The Debtor has demonstrated that its entry into the Purchase Agreement and related or ancillary agreements thereto or contemplated thereby (collectively, the "<u>Ancillary Agreements</u>") is supported by good, sufficient and sound business reasons. A sale of the Purchased Assets, including the assignment of the Assumed Contracts, will

maximize the value of the Debtor's estate and represents a reasonable exercise of the Debtor's sound business judgment. The Debtor determined that the Purchase Agreement constitutes the highest and otherwise best offer for the Purchased Assets, and pursuant to the terms and conditions of the Purchase Agreement, the Debtor has agreed to transfer to Buyer all of the Debtor's right, title, and interest in and to, the Purchased Assets free and clear of all liabilities and encumbrances, and, if requested by Buyer, to assume and assign the Contracts (collectively, the "Assigned Contracts") to Buyer subject to the terms and conditions of the Purchase Agreement and this Order, and such determination is a valid and sound exercise of the Debtor's business judgment.

G.      The consummation of the Sale and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

H.      Compliance with Bid Procedures. The Debtor, Buyer, and their respective counsel and other advisors have complied with the Bid Procedures Order, the Bid Procedures, and the Assumption and Assignment Procedures in all respects. Buyer submitted a Qualified Bid pursuant to the Bid Procedures approved by the Court, was determined to be the Successful Bidder for the Purchased Assets and was granted certain Bid Protections in accordance with the Bid Procedures Order and the Bid Procedures.

I.      Marketing Process. Through its court-appointed investment banker, The Silver Birch Group, Inc., the Debtor and its advisors thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in a fair and open manner, soliciting offers to acquire the Purchased Assets from a wide variety of parties. The sale process and the Bid

Procedures were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any Person or Entity that expressed an interest in acquiring the Purchased Assets, or who the Debtor believed may have an interest in acquiring, and be permitted and able to acquire, the Purchased Assets, to conduct due diligence, make an offer to purchase the Debtor's assets, including, without limitation, the Purchased Assets, and submit higher and otherwise better offers for the Purchased Assets than Buyer's Successful Bid. The Debtor and Buyer have negotiated and undertaken their roles leading to the Sale and entry into the Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner. The sale process conducted by the Debtor pursuant to the Bid Procedures Order and the Bid Procedures resulted in the highest and otherwise best offer for the Purchased Assets for the Debtor and its estate, was in the best interests of the Debtor, its creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result. The Debtor's determination that the Purchase Agreement constitutes the highest and otherwise best offer for the Purchased Assets and maximizes value for the benefit of the Debtor's estate constitutes a valid and sound exercise of the Debtor's business judgment and is in accordance and compliance with its fiduciary duties, the Bid Procedures and the Bid Procedures Order. The Purchase Agreement represents fair and reasonable terms for the purchase of the Purchased Assets. No other Person or Entity has offered to purchase the Purchased Assets for greater overall value to the Debtor's estate than the Buyer. Approval of the Motion (as it pertains to the Sale) and the Purchase Agreement and the consummation of the transactions contemplated thereby will maximize the value of the Debtor's estate and are in the best interest of the Debtor, its estate, its creditors, and all parties in interest, and the Debtor, along with its investment banker, conducted the related sale process in good faith and in a fair and open manner.

6

There is no legal or equitable reason to delay consummation of the transactions contemplated by the Purchase Agreement, including without limitation, the Sale.

J.      Good Faith. Buyer is not an "insider" or "affiliate" of the Debtor as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtor and the Buyer. The Purchase Agreement and the Ancillary Agreements, and each of the transactions contemplated therein were negotiated, proposed, and entered into by the Debtor and Buyer, their respective boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, and representatives without collusion or fraud, in good faith, and from an arm's-length bargaining positions, and are substantively and procedurally fair to all parties. Buyer is purchasing the Purchased Assets, in accordance with the Purchase Agreement, in good faith and is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. In particular, (i) Buyer recognized that the Debtor was free to deal with any other party interested in purchasing the Purchased Assets; (ii) Buyer in no way induced or caused the chapter 11 filing by the Debtor; (iii) Buyer has not engaged in any conduct that would cause or permit the Sale or the Purchase Agreement to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, managers, officers, or controlling stockholders exist between Buyer, on the one hand, and the Debtor, on the other hand; (v) Buyer complied with the Bid Procedures and all provisions of the Bid Procedures Order and the Assumption and Assignment Procedures; (vi) Buyer agreed to subject its Bid to the competitive Bid Procedures set forth in the Bid Procedures Order; and (vii) all payments to be made, and all other material agreements or arrangements entered into or to be

entered into, by Buyer in connection with the Sale, including the Ancillary Agreements, have been disclosed.

K.      No Collusion. Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtor nor the Buyer has violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Buyer has not acted in a collusive manner with any entity (as such term is defined in the Bankruptcy Code, an "Entity") and the Purchase Price paid by the Buyer for the Purchased Assets was not controlled by any agreement among potential bidders. The transactions under the Purchase Agreement may not be avoided, and no damages may be assessed against the Buyer Parties (as defined below) or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

L.      Fair Consideration. The aggregate consideration from Buyer for the Purchased Assets as set forth in the Purchase Agreement: (i) was negotiated at arm's-length; (ii) is fair and reasonable; (iii) constitutes fair consideration and fair value under the Bankruptcy Code, the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), the Uniform Fraudulent Conveyance Act and other similar laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction; (iv) is the highest and best value obtainable for the Purchased Assets; (v) will provide a greater recovery to creditors than would be provided by any other available alternative; and (vi) constitutes reasonably equivalent value (as that term is defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), the Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code). Without limiting the foregoing, no objection was raised to the Sale Motion

8

on the basis that the creditors of the Debtor were improperly prejudiced by the proposed sale. Based on the evidence before the Court, the sale consideration under the Purchase Agreement constitutes adequate consideration for the Purchased Assets of the Debtor and such consideration does not disadvantage the creditors of the Debtor.

M.      No Successor or Derivative Liability. Except as otherwise set forth in this Order or the Purchase Agreement, neither the Buyer, nor any of its successors or assigns, or any of their respective affiliates shall, to the fullest extent permitted by Law, have any liability for any Interests, Claims, or encumbrances that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtor or is related to the Purchased Assets prior to the Closing. There is no common identity between the Buyer and the Debtor. The Buyer (i) is not and shall not be deemed a "successor" to the Debtor or its estate; (ii) has not, de facto or otherwise, merged with or into the Debtor; (iii) does not have any common law or successor liability in relation to any employment plans; (iv) is not liable for any liability of any Interests against the Debtor or any of the Debtor's predecessors or Affiliates; and (v) is not an alter ego or mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor under any theory of law or equity as a result of any action taken in connection with the Purchase Agreement, Sale, or any transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtor or the Debtor's estate.

N.      Sale Notice. As shown by the certificates of service filed with the Court and the representations or proffers made on the record at the Sale Hearing, (i) the Debtor has provided due, good, proper, timely, reasonable, adequate, appropriate, and sufficient notice of and sufficient opportunity to object to the Motion and the relief requested therein (including the Debtor's

requested findings with respect to successor liability), the bidding process (including, without limitation, the deadline for submitting Qualified Bids), the Sale Hearing, the Sale, the application of proceeds from the Sale, the proposed assumption and assignment of the Assigned Contracts, and the proposed entry of this Order in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (ii) such notice was adequate and sufficient under the circumstances of the Chapter 11 Case and complied with the Bid Procedures Order and other orders of the Court, and (iii) no other or further notice is required.

O.      Title to Assets. The Purchased Assets constitute property of the Debtor's estate and title or rights thereto is currently vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. Effective upon the consummation of the Sale at Closing, the transfer of the Purchased Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Order will be a legal, valid, and effective sale and transfer of the Purchased Assets and, except as provided in the Purchase Agreement or this Order, will vest the Buyer with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all Interests. The Purchase Agreement is a valid and binding contract between the Debtor and the Buyer and shall be enforceable according to its terms.

P.      Satisfaction of Section 363(f) Standards. The conditions of section 363(f) of the Bankruptcy Code, including 363(f)(1) and (2), have been satisfied in full. Upon entry of this Order, the Debtor is authorized to transfer all of its right, title, and interest in and to the Purchased Assets free and clear of any and all claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities (including any liability that results from, relates to, or arises out of tort or any other product liability claim), interests, and matters of any kind and nature whatsoever, including, without limitation, hypothecations, mortgages, security deeds, deeds of trust, debts, levies,

indentures, restrictions (whether on voting, sale, transfer, disposition, or otherwise), leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, rights of preemption, rights of setoff, profit sharing interest, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims, environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan), WARN Act claims or any claims under state or other laws of similar effect, tax claims (including claims for any and all foreign, federal, state, and local taxes, including, but not limited to, sales, income, use, or any other type of tax), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, and other encumbrances relating to, accruing, or arising any time prior to the Closing Date, duties, responsibilities, obligations, demands, commitments, assessments, costs, expense, losses, expenditures, charges, fees, penalties, fines, contributions, premiums, encumbrances, guaranties, pledges, consensual or nonconsensual liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code), statutory liens, real or personal property liens, mechanics' liens, materialman's liens, warehouseman's liens, tax liens, security interests, charges, options (including in favor of third parties), rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, rights of first refusal, rights and restrictions of any kind or nature whatsoever against the Debtor (in respect of the Purchased

Assets) or the Purchased Assets, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims, or claims for taxes of or against the Debtor, and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession, or the District of Columbia), whether arising prior to or subsequent to the commencement of this Chapter 11 Case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability, including, without limitation, that the Buyer is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtor or its business, arising under or out of, in connection with, or in any way related to the Debtor, the Debtor's interests in the Purchased Assets, the operation of the Debtor's respective business at or before the effective time of the Closing pursuant to the Purchase Agreement, or the transfer of the Debtor's interests in the Purchased Assets to Buyer (collectively, "Interests"), as, and to the extent, provided for in the Purchase Agreement because in each case one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Except as otherwise expressly provided in the Purchase Agreement or this Order, such

Interests shall attach to the proceeds of the Sale in the order of their priority, subject to the terms of the DIP Orders, with the same priority, validity, force and effect which they have against the Purchased Assets immediately prior to the Closing, subject to any claims and defenses the Debtor may possess with respect to such Interests. Those holders of Interests in or against the Purchased Assets who did not object or who withdrew their objections to the Purchase Agreement or the Motion are deemed to have consented to the transactions contemplated by the Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code and shall be forever barred from pursuing or asserting such Interests against Buyer or any of its respective assets, property, affiliates, successors, assigns, or the Purchased Assets. All Interests with respect to the Excluded Assets will continue in, under, and against the Excluded Assets with the same priority, validity, force, and effect as such Interests now have.

Q.     Buyer would not have entered into the Purchase Agreement if the transfer of the Purchased Assets were not free and clear of all Interests as set forth in the Purchase Agreement and this Order, or if in the future Buyer would or could be liable for any such Interests. A sale of the Purchased Assets other than one free and clear of all Interests would adversely impact the Debtor, its estate, and its creditors, and would yield substantially less value for the Purchased Assets and the Debtor's estate, with less certainty than provided by the Sale. The total consideration to be provided under the Purchase Agreement and herein reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in, and possession of the Purchased Assets free and clear of all Interests of any kind or nature whatsoever.

R.     Assumption and Assignment of the Assigned Contracts. The assumption and assignment of the Assigned Contracts are integral to the Purchase Agreement, are in the best

13

interests of the Debtor and its estate and represent the reasonable exercise of the Debtor's sound business judgment. Specifically, the assumption and assignment of the Assigned Contracts (i) are necessary to sell the Purchased Assets to Buyer, (ii) allow the Debtor to maximize the value of the Purchased Assets, including the Assigned Contracts, (iii) limit the losses suffered by the counterparties to the Assigned Contracts, and (iv) maximize the recoveries to other creditors of the Debtor by limiting the amount of claims against the Debtor's estate by avoiding the rejection of the Assigned Contracts.

S.      Cure Notice. As shown by the certificates of service filed with the Court, the Debtor has served upon each non-debtor counterparty to such contracts (each, a "Counterparty"), prior to the Sale Hearing, a notice, dated October 27, 2025 [Docket No. 88] (the "Potential Assumption and Assignment Notice") that Debtor may wish to assume and assign to the Successful Bidder certain executory contracts and unexpired leases (the "Contracts") pursuant to section 365 of the Bankruptcy Code, and of the related proposed cure costs (if any) due under section 365(b) of the Bankruptcy Code (the "Cure Costs") with respect to such contracts and leases. The service of the Potential Assumption and Assignment Notice was good, sufficient, and appropriate under the circumstances of the Chapter 11 Case and complied with the Assumption and Assignment Procedures and any orders of the Court, and no other or further notice is required with respect to the Cure Costs or for the assumption and assignment of the Contracts. All Counterparties to the Contracts have had a reasonable and sufficient opportunity to object to the Cure Costs listed on the Potential Assumption and Assignment Notice in accordance with the Assumption and Assignment Procedures. Accordingly, all Counterparties to Contracts who did not object or who withdrew their objections to the Cure Costs listed on the Potential Assumption and Assignment Notice prior to November 17, 2025 at 12:00 pm, ET are deemed to have consented to such Cure

Costs, and all Counterparties to Assigned Contracts who did not file an objection to the assumption by the Debtor of such Assigned Contracts and the assignment thereof to Buyer prior to the Sale Hearing are deemed to have consented to the assumption of such Assigned Contract and the assignment thereof to Buyer.

T.      Application of Proceeds. Pursuant to the interim and final orders authorizing and approving the Debtor's debtor in possession financing and use of cash collateral [Docket Nos. 24 and 98] (together, the "DIP Orders"), the Debtor is required to apply all consideration received from the sale of the Purchased Assets in accordance with the DIP Orders.

U.      Corporate Power and Authority. The Debtor has (i) full corporate or similar power and authority to execute, deliver, and perform its obligations under the Purchase Agreement, the Ancillary Agreements, and all other documents contemplated thereby, and the Debtor's sale of the Purchased Assets has been duly and validly authorized by all necessary corporate or similar action, (ii) all corporate or similar authority necessary to consummate the transaction contemplated by the Purchase Agreement and the Ancillary Agreements, and (iii) taken all corporate actions necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtor to consummate the transactions contemplated by the Purchase Agreement or execute the Purchase Agreement.

V.      The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor the Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for

15

the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims or similar claims.

W.     Valid and Binding Contract; Validity of Transfer. The Purchase Agreement is a valid and binding contract between the Debtor and Buyer and shall be enforceable pursuant to its terms. The Purchase Agreement, the Ancillary Agreements, and the Sale itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtor and any chapter 11 trustee appointed in this Chapter 11 Case, or in the event the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(1) of the Bankruptcy Code and all the applicable requirements of such sections have been complied with in respect of the Sale.

X.     Pursuant to paragraph 38 of the Final DIP Order, the Court previously ordered that the DIP Lender has the right to credit bid the full amount of the DIP Obligations.

Y.     No Sub Rosa Plan. The Sale, the Purchase Agreement, and the other transactions contemplated thereby do not constitute a sub rosa chapter 11 plan. The Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates a liquidating chapter 11 plan for the Debtor.

Z.     Single, Integrated Transaction. Entry of this Order approving the Purchase Agreement and all provisions of this Order and the Purchase Agreement are a necessary condition precedent to the Buyer consummating the Sale. The provisions of this Order and the Purchase

16

Agreement and the transactions contemplated hereby and thereby are inextricably linked and technically and collectively constitute a single, integrated transaction.

AA.    <u>Waiver of Bankruptcy Rules 6004(h) and 6006(d)</u>. The Debtor has demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the Purchase Agreement and the Sale, and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement and all other Ancillary Documents for the Sale outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, and (b) a chapter 11 plan, in that, among other things, the immediate consummation of the Sale to the Buyer and all transactions contemplated thereby are necessary and appropriate to maximize the value of the Debtor's estate, and the Sale will provide the means for the Debtor to maximize distributions to its creditors. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by this Order. To maximize the value of the Purchased Assets and preserve the viability of the businesses to which they relate, it is essential that the Sale occur within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale. Given all of the circumstances of the Chapter 11 Case and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

BB.    <u>Personally Identifiable Information</u>. The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

17

CC.    <u>Legal and Factual Bases</u>. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtor and its estate, creditors, interest holders, and all other parties-in-interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bid Procedures Order or otherwise) is GRANTED as set forth herein.

2.    <u>Objections</u>. All objections, reservations of rights regarding, or other responses to, the Motion or the relief requested therein, the Purchase Agreement, all other Ancillary Agreements, the Sale, entry of this Order, or the relief granted herein, including, without limitation, any objections to Cure Costs or relating to the cure of any defaults under any of the Assigned Contracts or the assumption and assignment of any of the Assigned Contracts to the Buyer by the Debtor, solely as it relates to the relief granted by this Order that have not been adjourned, withdrawn, or resolved as reflected on the record at the Sale Hearing are overruled in all respects on the merits with prejudice, except as otherwise set forth herein. All Persons and Entities that failed to timely object to the Motion are deemed to have consented to the relief granted herein for all purposes.

3.    <u>Notice</u>. Notice of the Motion, the Sale Hearing, the Purchase Agreement, the Potential Assumption and Assignment Notice, and the relief granted in this Order was fair, sufficient, proper, and equitable under the circumstances and complied in all respects with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006.

4.    <u>Fair Purchase Price</u>. The Buyer is giving substantial consideration under the Purchase Agreement, and as provided herein, for the benefit of the Debtor, its estate, and creditors. The consideration to be provided by Buyer under the Purchase Agreement is fair and reasonable and constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform

18

Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), (b) fair consideration under the Uniform Fraudulent Conveyance Act, (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, and (d) valid and valuable consideration for the releases of any potential Interests pursuant to this Order, which releases shall be deemed to have been given in favor of Buyer by all holders of Interests of any kind whatsoever against the Debtor or any of the Purchased Assets, other than as otherwise expressly set forth in this Order. The consideration provided by Buyer for the Purchased Assets is fair and reasonable and may not be avoided by section 363(n) of the Bankruptcy Code.

5.      Approval of the Purchase Agreement. The Purchase Agreement and the Sale, including, without limitation, all transactions contemplated therein or in connection therewith (including the Ancillary Agreements) and all of the terms and conditions thereof, are hereby approved in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provision of the Purchase Agreement in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement, the Sale, and the transactions contemplated therein or in connection therewith (including the Ancillary Agreements) are authorized and approved in their entirety.

6.      Prior Findings of Fact and Conclusions of Law. The Court's findings of fact and conclusions of law in the Bid Procedures Order and the findings of fact recited above are incorporated herein by reference.

7.      Entitled to Credit Bid. The DIP Lender, or its assignees or designees, including any acquisition vehicles, is and was entitled to credit bid all or any portion of the DIP Obligations without further challenge from any other party in interest, it being found that all of the DIP

19

Obligations that constitute the Credit Bid Amount (as defined in the Purchase Agreement) are legal, valid, and binding obligations of the Debtor. Notwithstanding anything to the contrary herein: (i) other than the Credit Bid Amount, nothing in this Order shall impair, release, modify, discharge, or otherwise affect any of the outstanding DIP Obligations set forth in the Final DIP Order; and (ii) the occurrence of the Closing Date will constitute the consummation of a sale of all or substantially all of the assets of the Debtor pursuant to Section 363(b) of the Bankruptcy Code.

8.      Consummation of Sale. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtor is authorized to perform its obligations under and comply with the terms of the Purchase Agreement and the Ancillary Agreements, pursuant to and in accordance with the terms and conditions of the Purchase Agreement, the Ancillary Agreements, and this Order. The Debtor, as well as its affiliates, officers, employees, and agents, is authorized to execute and deliver, and empowered to perform under, consummate and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale, including the Ancillary Agreements, and to take all further actions and execute such other documents as may be (a) necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, including, without limitation, making any regulatory filings necessary or advisable in connection with such transfer, and (b) as may be reasonably requested by Buyer to implement the Purchase Agreement, the Ancillary Agreements, and the Sale in accordance with the terms thereof, without further order of the Court. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its rights or remedies under the Purchase Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence

and the other provisions of this Order; provided, however, that the Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

9.      <u>Direction to Government Agencies</u>. Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other Governmental Authority is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale and the other transactions contemplated by the Purchase Agreement and the Ancillary Agreements and approved by this Order.

10.     <u>Licenses and Permits</u>. To the extent provided in the Purchase Agreement and available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtor with respect to the Purchased Assets and the Assigned Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtor shall remain in place for the Buyer's benefit until a new license or permit is obtained (or, in the case of licenses or permits of the Debtor of which the assignment to Buyer is pending as of the Closing Date (whether pursuant to a notice period that has not expired as of the Closing Date or a required consent from an applicable governmental authority that has not been received as of the Closing Date), shall transfer to Buyer upon the expiration of such notice period or the receipt of such consent).

11.     <u>Transfer of Assets Free and Clear and Injunction</u>. Except as otherwise set forth in this Order, effective as of the consummation of the Sale at Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Sale of the Purchased Assets to Buyer, including the assignment of the Assigned Contracts, shall (a) constitute a legal, valid, and effective transfer of all of Debtor's right, title, and interest in and to such Purchased Assets subject to and in accordance with the Purchase Agreement, and (b) vest Buyer with all of the Debtor's right, title, and interest in and to such Purchased Assets free and clear of all Interests, with such Interest (including, without limitation, the liens held by the DIP Agent for the benefit of the DIP Lender) attaching to the proceeds of the Sale of the Purchased Assets received by the Debtor, subject to the terms of the DIP Orders, in the order of their priority, with the same priority, validity, force, and effect which they had against such Purchased Assets immediately prior to the Closing. All Persons or Entities that are presently, or on or after the Closing may be, in possession of some or all of the Purchased Assets, are hereby directed to surrender possession of the Purchased Assets to Buyer or its respective designees on the Closing Date or at such time thereafter as Buyer may request.

12.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale and transfer of the Debtor's right, title, and interest in the Purchased Assets to the Buyer upon the consummation of the Sale at Closing pursuant to the Purchase Agreement are a legal, valid, and effective disposition of the Purchased Assets, and vest the Buyer with all right, title, and interest of the Debtor to and in the Purchased Assets free and clear of all Interests. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and, upon the consummation of the Sale at Closing, the Debtor's sale of the Purchased Assets shall be free and clear of any Interests.

13.     The sale of the Purchased Assets is not subject to avoidance by any person or for any reason whatsoever, including, without limitation, pursuant to section 363(n) of the Bankruptcy Code and the Buyer and the Buyer Parties shall not be subject to damages, including any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

14.     On the Closing Date and upon consummation of the Sale, the Debtor's creditors, at the expense of the Debtor, are authorized to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

15.     The provisions of this Order authorizing the Sale of the Purchased Assets free and clear of all Interests upon the consummation of the Sale at Closing, except as otherwise expressly set forth in this Order, shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. All such Interests shall attach to the proceeds of the Sale, in the order of their priority, subject to the DIP Orders, with the same priority, validity, force and effect as such Interests had immediately prior to the consummation of such Sale. If any Entity which has filed a financing statement, mortgage, mechanic's lien, *lis pendens*, or other statement, document, or agreement evidencing any Interests on, or in, all or any portion of the Purchased Assets has not delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or any other documents necessary for the purpose of documenting the release and/or termination of all Interests which the Entity has or may assert with respect to all or any portion of the Purchased Assets, then, upon consummation of the Sale at Closing, (a) the Debtor and the Buyer are hereby authorized to execute and file such

23

statements, instruments, releases, and/or other similar documents on behalf of such Entity with respect to the Purchased Assets, and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release and/or termination of all Interests of any kind or nature against or in the Purchased Assets.

16.     Except as otherwise expressly set forth in this Order or the Purchase Agreement, the Buyer and the Buyer Parties shall not have any liability or other obligation of the Debtor arising under or related to any of the Purchased Assets, including, but not limited to, any liability for any liabilities whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing.

17.     Upon the Closing, except as otherwise expressly provided for in the Purchase Agreement or this Order, all Persons or Entities, including, but not limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, Counterparties, customers, landlords, licensors, employees, and other creditors and holders of Interests or other interests of any kind or nature whatsoever against the Debtor or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased

24

Assets, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Purchased Assets to the Buyer shall be, and hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer or any of its Affiliates, its past, present and future members or shareholders, its lenders, financing parties, subsidiaries, parents, divisions, agents, representatives, insurers, attorneys, successors and assigns, or any of its or their respective directors, managers, officers, employees, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (each a "Buyer Party" and collectively the "Buyer Parties"), or their respective assets or properties, including, without limitation, the Purchased Assets, Interests of any kind or nature whatsoever such Person or Entity had, has, or may have against or in the Debtor, its estate, officers, directors, managers, shareholders, or the Purchased Assets, such Person's or Entities' Interests or any other interests in and to the Purchased Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) against the Buyer or any Buyer Party, or their respective assets or properties, including, without limitation, the Purchased Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer or any Buyer Party, or their respective assets or properties, including, without limitation, the Purchased Assets; (c) creating, perfecting, or enforcing any Interests against the Buyer or any Buyer Party, or their respective assets or properties, including the Purchased Assets; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer or any Buyer Party, or their respective assets or properties, including, without limitation the Purchased Assets; (e) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with

25

the provisions of this Order, other orders of the Court, the Purchase Agreement, the other Ancillary Documents or any other agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets in connection with the Sale.

18.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date and upon the consummation of the Sale, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date and upon consummation of the Sale.

19.     To the extent provided by section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of this Chapter 11 Case or the consummation of the Sale.

20.     Subject to the terms, conditions, and provisions of this Order, all Entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtor to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the Purchase Agreement and this Order, and (b) with the ability of the Buyer to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Purchase Agreement and this Order.

21.     No Successor or Other Derivative Liability. Neither the Buyer, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest,

26

Claim, or encumbrance that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtor or is related to the Purchased Assets prior to the Closing. The Buyer (i) is not and shall not be deemed a "successor" to the Debtor or its estate; (ii) has not, de facto or otherwise, merged with or into the Debtor; (iii) does not have any common law or successor liability in relation to any employment plans; (iv) is not liable for any liability or Interest against the Debtor or any of the Debtor's predecessors or Affiliates; (v) has no common identity with the Debtor; and (vi) is not an alter ego or mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor under any theory of law or equity as a result of any action taken in connection with the Purchase Agreement, the Sale, or any transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets. Thus, the Buyer shall have no successor, transferee, or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment (including but not limited to with respect to any Multiemployer Plan), de facto merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Purchased Assets, the Debtor or any obligations of the Debtor arising prior to the Closing Date. The Buyer shall not be deemed to have expressly or implicitly assumed any of the Debtor's liabilities. Except as otherwise provided herein or in the Purchase Agreement, the transfer of the Purchased Assets to the Buyer pursuant to the Purchase Agreement shall not result in the Buyer or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether

27

by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtor or against any insider of the Debtor or Interests.

22.     This Order is and shall be effective as a determination that, upon the consummation of the Sale at Closing, all Interests, and any other interest of any kind or nature whatsoever as to the Purchased Assets prior to the Closing, shall have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable law, and that the conveyances described herein have been effected. This Order shall be binding upon and govern the acts of all Entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. Upon the consummation of the Sale at Closing, a certified copy of this Order may be filed and/or recorded with the appropriate filing agents, filing officers, administrative agencies or units, governmental departments, secretaries of state, federal, state and local officials and all other Persons, institutions, agencies and Entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record any documents or instruments evidencing the release, cancellation, and termination provided herein of any Interests of record on the Purchased Assets prior to the date of this Order. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate laws of the states of

28

formation of the Debtor and all other applicable business, corporation, trust, and other laws of the applicable governmental authorities with respect to the implementation and consummation of the Purchase Agreement, any related agreements or instruments, and this Order, and the transactions contemplated thereby and hereby.

23.     Upon the consummation of the Sale at Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets to Buyer and the Debtor's interests in the Purchased Assets acquired by Buyer pursuant to the terms of the Purchase Agreement.

24.     <u>Assumption and Assignment of the Assigned Contracts</u>. The Debtor is hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assigned Contracts to Buyer free and clear of all Interests, and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Buyer as provided in the Purchase Agreement. Cure Costs shall be paid by the Debtor subject to, and in accordance with, the terms of the Purchase Agreement and Bid Procedures Order. Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults required to be cured with respect to the Assigned Contracts under section 365(b)(1) of the Bankruptcy Code. Buyer has also provided adequate assurance of future performance under the Assigned Contracts in satisfaction of section 365 of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Counterparties to such Assigned Contracts. In accordance with the Assumption and Assignment Procedures and the terms of this Order, following the Closing, Buyer shall be fully and irrevocably vested with all of the Debtor's right, title, and interest in and under the Assigned Contracts, free and clear of any Interests, and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and

conditions, except as limited by this Order. In accordance with the Assumption and Assignment Procedures following assignment of the Assigned Contracts to Buyer, the Debtor shall be relieved from any further liability with respect to such Assigned Contracts. The assumption by the Debtor and assignment to Buyer of any Assigned Contract shall not be a default under such Assigned Contract. To the extent provided in the Purchase Agreement, the Debtor shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

25.     Assigned Contracts. The Debtor served all Counterparties to the Assigned Contracts with the Potential Assumption and Assignment Notice and shall serve the Confirmation Notice (as defined in the Potential Assumption and Assignment Notice) by the deadline set forth in the Potential Assumption and Assignment Notice, and the deadline to object to the Cure Costs and adequate assurance of future performance with respect to the Buyer has passed. Accordingly, unless an objection to the proposed assumption and assignment of an Assigned Contract (including whether applicable law excuses a Counterparty from accepting performance by, or rendering performance to, Buyer), the proposed Cure Costs or the adequate assurance of future performance information with respect to Buyer was filed and served before the applicable deadline, each Counterparty to an Assigned Contract is forever barred, estopped, and permanently enjoined from asserting against the Debtor or Buyer, their respective affiliates, successors or assigns, or the property of any of them, any objection to assignment or default existing as of the date of the Cure Costs/Assignment Objection Deadline (as defined in the Assumption and Assignment Procedures) if such objection or default was not raised or asserted prior to or at the Cure Costs/Assignment Objection Deadline.

26.     Direction to Contract Counterparties. All counterparties to Assigned Contracts assigned to the Buyer in accordance with the terms of this Order and the Purchase Agreement shall

cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Buyer, and shall not charge the Buyer for any instruments, applications, consents, or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtor's assumption and assignment of the Assigned Contracts to the Buyer; *provided, however*, that the foregoing shall not prejudice the rights of any counterparties to contracts subject to ongoing dispute.

27.     Adequate Assurance of Future Performance. All of the requirements of sections 365 of the Bankruptcy Code, including without limitation, the demonstration of adequate assurance of future performance, have been satisfied for the assumption by the Debtor, and the assignment by the Debtor to Buyer, solely with respect to the Assigned Contracts that are not subject to an unresolved Cure Cost/Assignment Objection. Buyer has satisfied its adequate assurance of future performance requirements with respect to the Assigned Contracts that are not subject to an unresolved Cure Cost/Assignment Objection and has demonstrated it is sufficiently capitalized or otherwise able to comply with the necessary obligations under those Assigned Contracts.

28.     Cure Costs. To the extent a Counterparty to an Assigned Contract failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as set forth on the relevant Potential Assumption and Assignment Notice as to each Counterparty and any such Counterparty shall be barred, and forever prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost as of such date.

29.     Impact of No Objection. Upon the Debtor's assumption and assignment of the Assigned Contracts to the Buyer under the provisions of this Order and any additional orders of the Court and the payment of any Cure Cost in accordance with the Purchase Agreement or any applicable order, no default or other obligations arising prior to the Closing Date shall exist under

any Assigned Contract, and each Counterparty is forever barred and estopped from (a) declaring a default by the Debtor or the Buyer under such Assigned Contract, (b) raising or asserting against the Debtor or the Buyer (or any Buyer Party), or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, or (c) taking any other action against the Buyer or any Buyer Party as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract, in each case in connection with the Sale. Each Counterparty is also forever barred and estopped from raising or asserting against the Buyer or any Buyer Party any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the closing of the Sale.

30.     With respect to objections to any Cure Cost/Assignment Objections relating to the Assigned Contracts that remain unresolved as of the Sale Hearing, such objections shall be resolved in accordance with the procedures approved in the Assumption and Assignment Procedures. Consideration of unresolved Cure Cost/Assignment Objections relating to assignment of Assigned Contracts, unless otherwise ordered by the Court or with the consent of the Counterparty to any Assigned Contract that is subject to a Cure Costs/Assignment Objection, shall be adjourned to a date to be determined; provided, however, that (a) any Assigned Contract that is the subject of a Cure Cost/Assignment Objection solely with respect to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, and (b) such undisputed Cure Cost shall be promptly cured on or after the Closing Date or as otherwise agreed to by the Debtor, Buyer, and the applicable Counterparty by payment of the applicable Cure Cost by the Debtor.

31.    Buyer's Standing; Debtor's Standing. The Buyer shall have standing to object to the allowance of claims (as such term is defined in section 101(5) of the Bankruptcy Code) asserted against the Debtor or its estate that constitute obligations assumed by the Buyer pursuant to the terms of the Purchase Agreement. Nothing in this Order shall divest the Debtor of its standing or duty as debtor-in-possession under the Bankruptcy Code from reconciling claims asserted against the Debtor or its estate and objecting to any such claims that should be reduced, reclassified, or otherwise disallowed.

32.    Ipso Facto Clauses Ineffective. With respect to the Assigned Contracts, in connection with the Sale: (a) the Debtor may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtor may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that directly or indirectly prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of each Assigned Contract have been satisfied; and (d) effective upon the Closing Date, or any later applicable effective date of assumption with respect to a particular Assigned Contract, the Assigned Contracts shall be transferred and assigned to, and from and following the Closing, or such later applicable effective date, and the Assigned Contracts shall remain in full force and effect for the benefit of the Buyer, notwithstanding any provision in any Assigned Contract (including those of the type described in sections 365(b)(2) and (e) of the Bankruptcy Code) that prohibits, restricts, or conditions such

assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract and the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assumption by the Debtor and assignment to the Buyer, except as otherwise provided in the Purchase Agreement. To the extent any provision in any Assigned Contract assumed and assigned pursuant to this Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including, without limitation, any "change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (A) the commencement of the Debtor's Chapter 11 Case, (B) the insolvency or financial condition of the Debtor at any time before the closing of the Debtor's Chapter 11 Case, (C) the Debtor's assumption and assignment of such Assigned Contract, (D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such provision shall be deemed modified in connection with the Sale so as not to entitle the Counterparty to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including without limitation, any such provision that purports to allow the Counterparty to terminate or recapture such Assigned Contract, impose any penalty, additional payments, damages, or other financial accommodations in favor of the Counterparty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect in connection with the Sale pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

33.     Except as otherwise specifically provided for by order of the Court, all defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts (in each case, without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be promptly cured pursuant to the terms of the Purchase Agreement and this Order on or after the Closing Date or as otherwise agreed to by the Debtor, Buyer, and the applicable Counterparty by the payment of the applicable Cure Cost by the Debtor, in accordance with the Purchase Agreement. The Buyer shall have no liability arising or accruing under the Assigned Contracts on or prior to the Closing, except as otherwise expressly provided in the Purchase Agreement or this Order.

34.     No Fees for Assumption and Assignment. There shall be no assignment fees, increases, or any other fees charged to the Buyer, its successors or assigns, or the Debtor as a result of the assumption and assignment of the Assigned Contracts.

35.     Good Faith; Statutory Mootness. Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. The Sale contemplated by the Purchase Agreement and the Ancillary Agreements is undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein shall neither affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts) nor the transfer of the Purchased Assets owned by the Debtor to Buyer pursuant to the Purchase Agreement, free and clear of all Interests. The Debtor

and Buyer will be acting in good faith if they proceed to consummate the Sale at any time after entry of this Order.

36.    <u>Approval of the Application of Proceeds</u>. The Debtor is authorized and directed to distribute the consideration received by the Debtor from the sale of the Purchased Assets pursuant to and in accordance with the DIP Orders.

37.    <u>Modification of Purchase Agreement</u>. The Purchase Agreement, the Ancillary Agreements, and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof and this Order without further order of the Court; provided that no such modification, amendment, or supplement may be made without further order of the Court if it is materially adverse to the Debtor or the Debtor's estate.

38.    <u>Failure to Specify Provisions</u>. The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

39.    <u>Standing</u>. The Purchase Agreement shall be in full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

40.    <u>Bulk Sales; Taxes</u>. No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes) shall apply to the Debtor's conveyance of the Purchased Assets or this Order.

41.    <u>Reservation of Rights</u>. Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtor or its estate from asserting or otherwise impair or diminish any

right (including any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset that is not a Purchased Asset.

42.     <u>Conflicts</u>. In the event there is a conflict between this Order and the Purchase Agreement (including any Ancillary Agreements executed in connection therewith), this Order shall control and govern. In addition, in the event there is a conflict between the Purchase Agreement and the Confirmation Notice with respect to the assumption and assignment of any executory contract or unexpired lease, the Confirmation Notice will control, and any contracts listed on the Confirmation Notice shall be "Assigned Contracts" as such term is used herein. Likewise, all the provisions of this Order are non-severable and mutually dependent. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in this Chapter 11 Case, the terms of this Order shall control.

43.     <u>Waiver of Bankruptcy Rules 6004(h) and 6006(d)</u>. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply, and the Debtor and the Buyer are authorized and empowered to close the Sale immediately upon entry of this Order.

44.     <u>Personally Identifiable Information</u>. After giving due consideration to the facts, circumstances, and conditions of the Purchase Agreement, the Sale is consistent with the Debtor's privacy policies concerning personally identifiable information and no showing was made that the sale of any personally identifiable information contemplated in the Purchase Agreement, subject to the terms of this Order, would violate applicable non-bankruptcy law.

37

45.     <u>Binding Effect of this Order</u>. This Order, the Purchase Agreement, and the Ancillary Agreements shall be binding in all respects upon, (a) the Debtor, (b) the Debtor's estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders of Interests or other interests (whether known or unknown) in, against, or on all or any portion of the Purchased Assets, (e) all Counterparties, (f) the Buyer and the Buyer Parties, (g) the Purchased Assets, and (h) all successors and assigns of each of the foregoing, including, without limitation, any trustee subsequently appointed in the Chapter 11 Case, or a chapter 7 trustee appointed upon a conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtor's case. This Order, the Purchase Agreement, and the Ancillary Agreements shall inure to the benefit of the Debtor, its estate and creditors, the Buyer, and the Buyer Parties, and the respective successors and assigns of each of the foregoing, including, without limitation, any trustee subsequently appointed in the Chapter 11 Case or upon conversion to chapter 7 under the Bankruptcy Code, and any Entity seeking to assert rights on behalf of any of the foregoing or that belong to the Debtor's estate. The Purchase Agreement and all other Ancillary Documents shall be binding in all respects upon the Debtor and the Buyer.

46.     <u>Subsequent Plan Provisions</u>. Nothing contained in any chapter 11 plan confirmed in the Debtor's Chapter 11 Case, any order confirming any such plan, or in any other order in this Chapter 11 Case (including any order entered after any conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Order.

47.     <u>Further Assurances</u>. From time to time, as and when requested by any party, each party to the Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Purchase Agreement.

48.     <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction with respect to all matters arising from or related to this Order and the Purchase Agreement (and such other related agreements, documents, or other instruments) and to interpret, implement, and enforce the terms of this Order and Purchase Agreement.

49.     <u>Notice</u>. The Debtor is directed to serve a copy of this Order upon (a) the U.S. Trustee; (b) the creditors included on the Debtor's list of twenty (20) largest unsecured creditors; (c) the DIP Lender; (d) counsel to the DIP Lender; (e) the Subchapter V Trustee; (f) any other parties with a particularized interest in the Motion; and (g) other parties entitled to notice pursuant to Bankruptcy Rule 2002 within three (3) days after entry and to file a certificate of service specifying the manner and method of service.

50.     The Debtor is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

END OF ORDER

Prepared and presented by:


*/s/ Leah Fiorenza McNeill*
Leah Fiorenza McNeill
Georgia Bar No. 940554
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309
Phone:  404-881-7000
Email:  leah.mcneill@alston.com

*Counsel for the Debtor and*
*Debtor-in-Possession*

40